```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
                                          :
GREGORY MORGENWECK,                       :
                                          :
                    Plaintiff,            :
                                          :   08 Cv. 2969(BSJ)
          v.                              :   Order
                                          :
VISION CAPITAL ADVISORS, LLC,             :
VISION OPPORTUNITY CAPITAL MANAGEMENT,    :
LLC, ADAM BENOWITZ, and RANDOLPH COHEN,   :
                                          :
                    Defendants.           :
------------------------------------------x
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Defendants Vision Capital Advisors, LLC, Vision Opportunity Capital Management, LLC, Adam Benowitz ("Benowitz"), and Randolph Cohen ("Cohen") (collectively, "Defendants") have moved for Summary Judgment dismissing the action for breach of contract and related claims brought by Plaintiff Gregory Morgenweck ("Plaintiff" or "Morgenweck"). For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED in its entirety.

### BACKGROUND[1]

Beginning in March 2004, Plaintiff was engaged by oral agreement to provide information technology ("IT") services to two start-up ventures: Gargoyle Partners LLC ("Gargoyle") and an investment consulting firm, Vision

---

[1] The following facts are undisputed, except where specifically noted.

1

Capital (the "Consulting Firm"). (Pl.'s Rule 56.1 Statement ¶¶ 3,5[2]; Defs.' Rule 56.1 Stmt. ¶¶ 3,5.) Later in June 2005, the principals of the Consulting Firm, Defendants Cohen and Benowitz, wound down the Consulting Firm business and launched a hedge fund. (Pl.'s Rule 56.1 Statement ¶ 9; Defs.' Rule 56.1 Stmt. ¶9.) The investment adviser to the new hedge fund was a limited liability company named Vision Capital Advisors LLC (the "Hedge Fund"). (Id.)

Plaintiff continued to provide certain IT services to Gargoyle and the new Hedge Fund until January 2006. (Pl.'s Rule 56.1 Statement ¶ 13; Defs.' Rule 56.1 Stmt. ¶13.) Because the various ventures were early-stage businesses without the cash to pay Plaintiff on a regular basis, in March 2004, Plaintiff was promised compensation in the form of a share of the ventures' profits in exchange for all of Plaintiff's services rendered to the ventures. (Pl.'s Rule 56.1 Statement ¶ 3; Defs.' Rule 56.1 Stmt. ¶3.) Herein lies the dispute: Defendants contend that Plaintiff was promised 10% of Gargoyle's profits, (Defs.' Rule 56.1 Stmt. ¶ 5), while Plaintiff alleges that he was "specifically promised 10% of Vision's profits, in addition to the agreed upon 10%

---

[2] Facts set forth in a Rule 56.1 Statement will be deemed admitted unless "specifically disputed" with supported assertions. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); see also, Swissport Puerto Rico v. Eagle Global Logistics, Inc., 2007 WL 496437, *2 (E.D.N.Y. 2007).

2

of Gargoyle's profits" (Pl.'s Rule 56.1 Stmt. ¶ 5). Plaintiff concedes that he was paid 10% of Gargoyle's profits until February 2006. (Pl.'s Rule 56.1 Stmt. ¶ 7; Defs.' Rule 56.1 Stmt. ¶ 7.)

Plaintiff characterized the compensation he received from Gargoyle on his 2005 and 2006 tax forms as "consulting" income earned as a "sole proprietorship." (Gregory Morgenweck Dep., October 24, 2008 ("Morgenweck II") 287:3-22.) Further, Plaintiff issued an invoice to Defendants demanding payment for consulting services in December 2005. (Pl.'s Rule 56.1 Stmt. ¶ 12; Defs.'s Rule 56.1 Stmt. ¶ 12.)

In January 2006, the parties decided to negotiate a parting of ways. (Pl.'s Rule 56.1 Stmt. ¶ 13; Defs.'s Rule 56.1 Stmt. ¶ 13.) After several weeks of negotiations, the Hedge Fund and Plaintiff agreed to terms, according to which Plaintiff would license his software to the Hedge Fund, upload it to the Hedge Fund's server, and provide certain limited technology support for the software. (Pl.'s Rule 56.1 Stmt. ¶ 13; Defs.'s Rule 56.1 Stmt. ¶ 13.) In exchange, the Hedge Fund would provide Plaintiff with a new laptop, which would facilitate the upload of the software, and agreed to pay Plaintiff $30,000 in three installments, in exchange for the license and uploading of the software.

3

(Pl.'s Rule 56.1 Stmt. ¶ 14; Defs.'s Rule 56.1 Stmt. ¶ 14.) Although Plaintiff never signed the Consulting and License Agreement, he sent an email stating, "We are good," with respect to the final draft of the Consulting and License Agreement. (Pl.'s Rule 56.1 Stmt. ¶ 15; Defs.'s Rule 56.1 Stmt. ¶ 15.) On the day that Plaintiff was supposed to upload the software, he refused to do so and left the Hedge Fund's offices with the laptop. (Pl.'s Rule 56.1 Stmt. ¶ 16; Defs.'s Rule 56.1 Stmt. ¶ 16.) The parties were not in contact until Plaintiff's counsel sent Defendants a demand letter on January 31, 2008. (Pl.'s Rule 56.1 Stmt. ¶ 17; Defs.'s Rule 56.1 Stmt. ¶ 17.)

Plaintiff brought this suit on March 21, 2008.

**LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City

4

of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

## DISCUSSION

### A. Plaintiff's Labor Claims

In Counts I and III, Plaintiff seeks "lost wages" under Pennsylvania and New York labor statutes, respectively, Pennsylvania Wage Payment and Collection Law ("WPCL") 43 P.S. § 260.9(a) et. seq. and New York Labor Law §§ 193 & 198. Defendants move to dismiss these claims on

5

the ground that Plaintiff fails to present any admissible evidence that he was an employee of Defendants. The Court agrees.

In defining who is an employee under the WPCL, Pennsylvania courts have relied on the definition set forth in Pennsylvania's Unemployment Compensation and Worker's Compensation Acts[3] and have consistently ruled that "an 'independent contractor' is not an employee'." Morin v. Brassington, 871 A.2d 844, 850 (Pa. Super. 2005)(citing Sarver Towing (Wausau Ins. Co.) v. WCAB, 736 A.2d 61, 62-63 (Pa. Comwlth. 1999)). Similarly, New York courts have consistently held that independent contractors are excluded from the definition of "employee" under Article 6 of New York's Labor Law. Bhanti v. Brookhaven Mem'l Hosp. Med. Ctr., 260 A.D.2d 334, 335, 678 N.Y.S. 2d 667, 668 (2d Dept. 1999)(citing Di Lorenzo v. Sbarra, 124 A.D.2d 446, 507 N.Y.S. 2d 548 (3d Dept. 1986).

In order to determine whether control over an individual was sufficient to trigger an employee-employer relationship, New York courts consider "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed

---

[3]See WPCL 43 P.S. § 260.2a (2008); Frank Burns, Inc. v. Interdigital Comm. Corp., 704 A.2d 678, 680 (Pa. Super. 1997).

6

schedule." Bynog v. Cipriani Group, 1 N.Y. 3d 193, 198, 770 N.Y.S.2d 692, 695 (2003)(citing Lazo v Mak's Trading Co., 84 N.Y.2d 896, 897, 620 N.Y.S.2d 794, 644 N.E.2d 1350). The Pennsylvania courts apply similar factors. See, e.g., Morin v. Brassington, 871 A.2d at 850 (citing Lynch v. WCAB, 554 A.2d 159, 160 (Pa. Comwlth. 1989).

Defendants present admissible evidence that Plaintiff was an independent contractor as a matter of law and, thus, is not entitled to assert a claim for allegedly unpaid wages under either New York or Pennsylvania labor statutes. Here, it is undisputed from the record that: Plaintiff worked from home (Gregory Morgenweck Dep., October 2, 2008 "Morgeweck I") 90: 15-20; 132:18-133:6); he did not receive employee benefits of any kind (Id. at 135: 20-25); he was free to pursue, and did pursue, other projects (Id. at 135:8-11); he was not on payroll (Randolph Cohen Dep., Dec. 12, 2008 ("Cohen Dep.") 61: 10-19); he described his work as "consulting" on his tax forms (Morgenweck Depo II, 287:3-22); and he issued an invoice to Defendants for consulting services (Fischer Decl., Ex. F).

Plaintiff does not contest the evidence presented by Defendants. Rather, Plaintiff argues that (1) he worked approximately 60-80 hours per week, (2) Defendants discouraged him from engaging in other employment, and (3)

7

he was "under the impression that he was Defendants' employee." (Pl.'s Opp. Br. 5.) Plaintiff's claims that he worked 60-80 hours per week and that he was "under the impression" that he was an employee, are not factors relevant to assessing whether control over an individual was sufficient to trigger an employee-employer relationship. With respect to his argument that Defendants "discouraged" him from seeking other employment, see Pl.'s Opp. Br. 5, Plaintiff presents no evidence in support of his claim and his position is contradicted by his deposition testimony that he was not told by Defendants that he couldn't accept other employment. (Morgenweck I, 133: 14-18.) In sum, it is clear Plaintiff was not employed by Defendants, but was an independent contractor. Accordingly, Plaintiff's state labor law claims must be DISMISSED.

### B. Plaintiff's Breach of Contract Claim

Defendants move for summary judgment on Plaintiff's breach of contract claim. Plaintiff contends that Defendants breached an oral agreement pursuant to which, in exchange for his IT services, he was to receive a "10% equity share, which includes 10% of annual net profits, of

Defendants Vision Capital and Vision Opportunity." [4] (Compl. ¶¶ 30, 32.) It is undisputed that the parties entered into their agreement in March 2004 and that the Hedge Fund was launched 15 months later in June 2005. (Pl.'s Opp. Br. 8; Defs.' Reply 7.) Defendants argue that the contract alleged by Plaintiff is unenforceable because it is not capable of being performed within one year, in violation of the Statute of Frauds. The Court agrees.

> General Obligations Law § 5-701(a)(1) states that:
>
> every agreement, promise or undertaking is void, unless it...be in writing, and subscribed by the party to be charged therewith...if such agreement, promise or undertaking: by its terms is not to be performed within one year from the making thereof...

N.Y. General Obligations Law § 5-701(a)(1) (McKinney 1992). Accordingly, when determining whether to enforce an oral contract, a court must look to "the nature of the [] agreement in order to determine if there is any possibility that the agreement could have been completed within one year." Kubin v. Miller, 801 F.Supp. 1101, 1120 (S.D.N.Y. 1992)(applying New York law); see also, Freedman v. Chemical Construction Corp., 43 N.Y.S.2d 176, 180 (1977)(defining as unenforceable "an oral agreement which

---

[4] Although Plaintiff refers to his claim for compensation as one for "10% equity share, which includes 10% of annual net profits" (See Compl. ¶ 32), he only seeks damages and does not request the Court to order specific performance of the contract by granting him an equity interest in Defendant Vision Capital and Vision Opportunity.

'[by] its terms is not to be performed within one year from the making thereof,'" and stating further that "[t]he critical test... is whether 'by its terms' the agreement is not to be performed within a year.")(citing North Shore Bottling Co. v. Schmidt & Sons, 22 N.Y.2d 171, 292 N.Y.S. 2d 86 (1968))(additional citations omitted).

In light of this analysis, courts have expressly held that agreements calling for "annual" payments "clearly anticipate payments over a period of more than one year," particularly when such payments are based on a company's annual income. Id. (dismissing breach of contract claim referring to annual income for failure to comply with New York's Statute of Frauds); see also, Thin Film Lab, Inc. v. Comito, 218 F. Supp. 2d 513, 530 (S.D.N.Y. 2002)(agreement providing for 10% of profits over $400,000 for calendar year, payable at the start of the next calendar year, was unenforceable under New York's statute of frauds); Briefstein v. P.J. Rotondo Constr. Co., Inc., 8 A.D.2d 349, 350-51, 187 N.Y.S.2d 866 (1st Dept. 1959)(purported compensation agreement calling for payment of 25% of corporate profits was barred by statute of frauds because such profits would, "if 'determined by usual accounting methods' not be ascertainable until a period beyond the year during which the contract would run;" further, the

agreement was not expressly limited to a single year or any specific period).

Under well-settled law, Plaintiff's breach of contract claim that he is entitled to "10% of annual net profits" pursuant to the oral agreement between the parties is barred by General Obligations Law § 5-701(a)(1). Even liberally construed, the oral agreement between Plaintiff and Defendants cannot be performed within one year. It is undisputed that the agreement was entered into in March 2005 and that the Hedge Fund did not launch until June 2005 - let alone realize annual profits. Because Plaintiff's version of the agreement could not have possibly resulted in performance of the contract within a year, it is unenforceable, and his claim for breach of contract must be DISMISSED.

## C. Plaintiff's Quasi-Contract and Equitable Claims

### 1. Plaintiff's Claim for Quantum Meruit and Unjust Enrichment

Defendants move to dismiss Plaintiff's quasi-contract claims for unjust enrichment and quantum meruit because (1) a valid and enforceable contract exists, (2) they are indistinguishable from his breach of contract claim, and (3) he asserts them to circumvent the Statute of Frauds. The Court agrees.

First, Plaintiff may not make quasi-contract claims because it is undisputed that the parties entered into a valid and binding oral agreement in March 2004 that covered the matter of Plaintiff's compensation. In fact, unjust enrichment and breach of contract claims cannot coexist unless "there is a bona fide dispute as to the existence of a valid and enforceable contract or where the contract does not cover the dispute in issue." See 22A N.Y. Jur. Contracts § 541 (2008); see also, Martin H. Bauman Associates, Inc. v. H&M Inter'l Transport, 171 A.D.2d at 484, 567 N.Y.S.2d at 408 (holding that "a cause of action under a quasi contract theory 'only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent another party's unjust enrichment'")(citing Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co., 70 N.Y.2d 653, 656 (1987)(further citations omitted)). More particularly, where a valid agreement requires a plaintiff to perform the very service on which he bases his unjust enrichment claim, the unjust enrichment claim will fail. McCluskey v. County of Suffolk, 9 Misc. 3d 1106A, 806 N.Y.S.2d 446 (Sup. Ct., Suffolk Cty, July 5, 2005); see also Zito v. Fischbein, Badillo, Wagner & Harding, 35 A.D.3d 306, 831 N.Y.S.2d 25 (1st Dept. 2006)(finding

recovery for services in quantum meruit precluded where "an enforceable oral contract exist[ed] that covered the matter of plaintiff's compensation"). Here, Plaintiff argues that there is a genuine dispute as to the terms of the alleged oral agreement to provide Morgenweck compensation, but he does not dispute that a valid oral agreement covering this subject matter was entered into in March 2004. (Pl.'s Rule 56.1 Stmt. ¶ 3.) Under these circumstances, Plaintiff's quasi-contract claims must be dismissed.

Second, Plaintiff is barred from asserting claims for quantum meruit or unjust enrichment where they are indistinguishable from his breach of contract claim. Under New York law, "[a] claim for unjust enrichment, or quasi-contract, may not be maintained where a contract exist between the parties covering the same subject matter." Goldstein v. CBIC World Markets Corp., et al., 6 A.D.3d 295, 296, 776 N.Y.S.2d 12, 14 (1st Dept. 2004)(dismissing unjust enrichment claim on the grounds that it was "indistinguishable" from a breach claim relating to the allegedly fraudulent and usurious transaction at issue); see also, Martin Bauman Assocs., 171 A.D.2d at 408 (affirming rejection of plaintiff's quantum meruit claim and holding that "quantum meruit is intended to avoid a party's unjust enrichment [and] certainly not a device

13

wherein a plaintiff may enforce a purported agreement which might ultimately be found not to be viable"). Here, the facts alleged in Plaintiff's claim in quantum meruit and claim for unjust enrichment are the same as those alleged in his breach claim, and he does not seek anything other than contract damages. For this additional reason, the Court must dismiss Plaintiff's quasi-contract claims.

Third, as explained above, Plaintiff's claim that his alleged contract with Defendants entitled him to 10% of the Hedge Fund's annual net profits is unenforceable under the Statute of Frauds. It is well-established that a party may not assert claims "to recover damages in quantum meruit and for unjust enrichment ... to circumvent the Statute of Frauds." See Strauss v. Fleet Mortgage Corp., 282 A.D.2d 736, 737, 724 N.Y.S.2d 356 (2nd Dept. 2001); see also Grappo v. Alitalia Linee Aeree Italiane, S.P.A., 56 F.3d 427, 434 (2d Cir. 1995)(stating, "[i]t is true under New York law, that a plaintiff may not escape the Statute of Frauds by simply affixing the label 'quantum meruit' to the very contract claim that is barred")(citing Farash v. Sykes Datatronics, Inc., 59 N.Y.2d 500, 503, 465 N.Y.S.2d 917, 918 (1983)). Here, Plaintiff seeks expectation damages – the very relief the Statute of Frauds precludes him from obtaining by barring his claim for breach of contract.

For these reasons, Plaintiff's quasi-contract claims must be DISMISSED.

### 2. Plaintiff's Promissory Estoppel Claim

Plaintiff's promissory estoppel claim fails for similar reasons. Under New York law, in order to succeed on a claim for promissory estoppel, a plaintiff must show "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance." See R.G. Group, Inc. v. The Horn & Hardart Co., 751 F.2d 69, 78(2d Cir. 1984) (citing Ripple's of Clearview, Inc. v. Le Havre Associates, 88 A.D.2d 120, 122-123, 452 N.Y.S.2d 447, 449 (2d Dept. 1982)). Promissory estoppel claims, like quasi contract claims, are often brought as alternatives to actions for breach of contract. See Tri-Country Motors, Inc. v. American Suzuki Motor Corp., 494 F. Supp.2d 161, 173, (E.D.N.Y. 2007), aff'd, No. 07-3275-C4, 2008 WL 5063291_Fed.Appx._(2d Cir., Nov. 24, 2008). Therefore,

> [E]ven if a plaintiff is able to establish promissory estoppel, New York Courts have further restricted the application of the theory, so as not to undermine the important policies underlying the Statute of Frauds, to the limited class of cases in which 'the circumstances are such as to render it unconscionable' to refuse to enforce the promise upon which the promisee has relied.

Id. (citing Sterling Interiors Group, Inc. v. Haworth, Inc., No. 94 Civ. 9216, 1996 WL 426379, at *21 (S.D.N.Y. July 30, 1996)(further citations omitted)).

In Merex A.G. v. Fairchild Weston Systems, Inc., the Second Circuit cautioned against the liberal application of the doctrine of promissory estoppel, where the plaintiff sought to recover expectation damages under an alleged oral contract that the lower court ruled unenforceable under the Statute of Frauds:

> In short, plaintiff's reach exceeds its grasp by invoking an equitable theory (estoppel) to give it the legal relief (expectation damages) that is denied to it by the Statute of Frauds. This it may not do. To invoke the power that equity possesses to trump the Statute of Frauds plaintiff must demonstrate 'unconscionable' injury, i.e., injury beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement.

29 F.3d 821, 825-26 (2d Cir. 1994), cert. denied, 513 U.S. 1084, 115 S. Ct. 737 (1995)(citing Philo Smith & Co. v. USLIFE Corp., 554 F.2d 34, 36 (2d Cir. 1997).

Here, Plaintiff's promissory estoppel claim is an improper circumvention of the Statute of Frauds, as he seeks to recover amounts he would not be entitled to as a matter of contract. Further, Plaintiff provides no evidence that demonstrates "unconscionable injury" as a result of the alleged estoppel. Plaintiff himself concedes that he

was paid 10% of Gargoyle's profits. (See Pl.'s Rule 56.1 Stmt. ¶ 7.) Moreover, as set forth in Jonathan Katz's export report, the amounts paid by Gargoyle exceed the total value of the services Plaintiff rendered. (See Fischer Decl., Ex. M.) As Plaintiff provides no evidence to support his bald argument that a genuine issue of fact exists as to the unconscionability of Defendants' actions, Plaintiff's promissory estoppel claim must be DISMISSED.

### D. Plaintiff's Tort Claims

#### 1. Plaintiff's Claim for Intentional Interference with Contractual Relationships

Under New York law, to establish tortious interference with a prospective contract a party must show: "(1) business relations with a third party; (2) the defendant's interference with those business relations; (3) that the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship." See State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 246 F. Supp.2d 231, 254-55 (S.D.N.Y. 2002)(citing Astor Holdings, Inc. v. Roski, 2002 U.S. Dist. LEXIS 758, No. 01 Civ. 1905, 2002 WL 72936, at *19 (S.D.N.Y. Jan. 17, 2002), aff'd 374 F.3d 158 (2d Cir. 2004); see also, Tri-Country Motors, Inc., 494 F. Supp 2d at 173 (stating that in order

to establish a claim for interference with a prospective business relationship a plaintiff "would have to demonstrate 'fraud, misrepresentation, threats of violence or other wrongful conduct' on the part [of the defendant]."); NBT Bancorp Inc. v. Fleet, 87 N.Y.2d 614, 621, 641 N.Y.S.2d 581, 585 (1996)(stating that "where there has been no breach of an existing contract, but only interference with prospective contract rights...plaintiff must show more culpable conduct on the part of the defendant."). Moreover, the plaintiff must demonstrate that the defendant's actions cause the plaintiff's alleged loss. Id.

Here, Plaintiff has offered no evidence of any third-party contracts with which Defendants supposedly interfered. Further, Plaintiff was unable to identify any such contracts during his deposition. Accordingly, Plaintiff's claim for tortious interference with a prospective contract must be DISMISSED.

2. Plaintiff's Claim for Fraudulent Misrepresentation

Under New York law, "'general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim.'" Miller v. Holtzbrinck Publrs., LLC, 2010 U.S. App. LEXIS 9893 (2d Cir. 2010)(quoting Wall v. CSX Transp.,

Inc., 471 F.3d 410, 416 (2d Cir. 2006). Accord Grappo v. Alitalia Linee Aeree Italiane, S.P.A., 56 F.3d 427, 434 (2d Cir. 1995) ("A cause of action for fraud does not generally lie where the plaintiff alleges only that the defendant entered into a contract with no intention of performing."). However, under New York law, "not every fraud claim is foreclosed in an action also involving a contract." Miller, 2010 U.S. App. LEXIS 9893 at *5.

To maintain a fraud claim based on intentionally-false statements indicating an intent to perform under a contract, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Brigestone/Firestone, Inc. v. Recovery Credit Servs., 98 F.3d 13, 20 (2d Cir. 1996).

Here, the alleged fraudulent misrepresentation, as expressly pled by Plaintiff in Count VII, is nothing other than the alleged failure to honor the supposed March 2004 agreement. As Plaintiff fails to present any evidence - or even argue - that one of the three narrow exceptions stated

above in Miller applies, Plaintiff's fraud claim must be DISMISSED.

### E. Plaintiff's Punitive Damages Claim

As the Court has dismissed all of Plaintiff's claims, Plaintiff's request for punitive damages is moot.

### CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Docket Item #21) is GRANTED in its entirety. Because no further issues remain to be decided in this action, the Clerk of the Court is directed to close the case.

**SO ORDERED:**

_____
BARBARA S. JONES
**UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York

         June 3, 2010

20